[Cite as *Turner v. Turner*, 2026-Ohio-2782.]

# IN THE OHIO COURT OF APPEALS
## FIFTH APPELLATE DISTRICT
## FAIRFIELD COUNTY, OHIO

| | |
|---|---|
| SCOTT ALAN TURNER | Case No. 25 CA 040 |
| Plaintiff - Appellant | Opinion And Judgment Entry |
| -vs- | Appeal from the Court of Common Pleas, Domestic Relations Division, Case No. 2024 DR 00308 |
| MELISA MADONNA TURNER | |
| Defendant - Appellee | Judgment: Affirmed |
| | Date of Judgment Entry: |

**BEFORE:** Andrew J. King; Robert G. Montgomery; Kevin W. Popham, Judges

**APPEARANCES:** JAMES S. SWEENEY, for Plaintiff-Appellant; JEFFERSON C. YATES, for Defendant-Appellee.

*King, P.J.*

{¶ 1}   Plaintiff-Appellant, Scott Alan Turner ("Husband"), appeals several orders from the September 15, 2025 judgment entry – decree of divorce of the Fairfield County Domestic Relations Court.  Defendant-Appellee is Melisa Madonna Turner ("Wife").  We affirm the trial court.

## FACTS AND PROCEDURAL HISTORY

{¶ 2}   Husband and Wife were married on January 4, 2007.  On August 29, 2024, Husband filed a complaint for divorce.  A trial was held on July 22, 2025.  By judgment entry – decree of divorce filed September 15, 2025, the trial court granted the parties a divorce and issued several orders dividing their property.

{¶ 3}   Husband filed an appeal with the following assignments of error:

I

{¶ 4}   "THE TRIAL COURT ERRED WHEN IT ORDERED THE SALE OF THE MARITAL RESIDENCE."

II

{¶ 5}   "THE TRIAL COURT ERRED WHEN IT ORDERED HUSBAND TO SELL PERSONAL PROPERTY."

III

{¶ 6}   "THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO FIND A DE FACTO TERMINATION DATE OF THE MARRIAGE AS AUGUST, 2024, RESULTING IN AN INEQUITABLE DIVISION OF MARITAL PROPERTY."

IV

{¶ 7}   "THE TRIAL COURT'S ERRED IN AWARDING SPOUSAL SUPPORT AND MAINTAINING JURISDICTION OVER THE ISSUE OF SPOUSAL SUPPORT."

APPLICABLE LAW

{¶ 8}   Each of these assignments of error are to be reviewed under an abuse of discretion standard.  R.C. 3105.171(J)(2); *Espenschied v. Espenschied,* 2002-Ohio-5119, ¶ 14 (5th Dist.), citing *Booth v. Booth,* 44 Ohio St.3d 142 (1989) (sale of marital residence and personal property); *Boggs v. Boggs*, 2008-Ohio-1411, ¶ 67 (5th Dist.), citing *Berish v. Berish,* 69 Ohio St.2d 318, 319-320 (1982) (marriage termination date); *Neville v. Neville,* 2003-Ohio-3624; *Stevens v. Stevens,* 23 Ohio St.3d 115 (1986) (spousal support award).  "Abuse of discretion" means an attitude that is unreasonable, arbitrary or unconscionable.  *Huffman v. Hair Surgeon, Inc.,* 19 Ohio St.3d 83, 87 (1985).  Most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.  *AAAA*

*Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161 (1990). An unreasonable decision is one backed by no sound reasoning process which would support that decision. *Id.* "It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

{¶ 9} We will review Husband's arguments under this standard of review.

I

{¶ 10} In Husband's first assignment of error, he claims the trial court erred in ordering the sale of the marital residence. We disagree.

{¶ 11} R.C. 3105.171(C)(1) states the division of marital property "shall be equal." But if an equal division of marital property would be inequitable, the trial court "shall divide it between the spouses in the manner the court determines equitable." *Id.*

{¶ 12} At the time of the marriage in 2007, Husband resided in a home in Baltimore, Ohio. The parties purchased the residence in 2017. T. at 18. The appraised value of the marital residence at the time of trial was $595,000.00 with a mortgage loan of $381,691.31. T. at 76, 80-81; Defendant's Exhibit U. There was also a home equity line of credit on the marital residence in the amount of $87,000.00. T. at 171. Husband opined the marital equity in the home was around $127,000.00 which he agreed Wife was entitled to half of that amount. T. at 63-64.

{¶ 13} Husband testified he wanted to remain living in the home and he was willing and able to do whatever the bank required of him to assume the loan and remove Wife's name from the mortgage. T. at 60, 62, 64-65. Husband stated he could refinance the mortgage, pay the new amount, pay off the home equity line of credit, and pay Wife her half of the equity in

the marital residence; however, he did not obtain any preapproval from a bank. T. at 80-82. Wife testified she believes the marital home is actually worth at least $700,000.00 and she would like to own the home. T. at 152-153, 161. Although Wife testified that she received preapproval from a bank, she did not present any documentation to support her testimony. T. at 161-162, 204, 206. Each party testified to having income over $100,000.00, but also to spending large sums of money. T. at 50-54, 83-86, 91, 94-95, 99, 107, 117, 127, 171-173, 174-179, 191-194, 207, 209-210; Plaintiff's Exhibits 4, 5, 6, and 9; Defendant's Exhibits L, M, EE, and HH.

{¶ 14} Husband argues his income "illustrated that he had the ability to assume the mortgage as well as the home equity line of credit." Appellant's Brief at 4. But the trial court found the following:

38. Plaintiff-Husband testified that he is able to assume the loan to remove Defendant-Wife's liability on the mortgage. There was no testimony that Plaintiff-Husband could refinance or assume the home equity line of credit on the marital residence. There was no evidence that Plaintiff-Husband is able to get financing to pay Defendant-Wife her share of equity in the marital residence. Plaintiff-Husband testified that he never sought a pre-approval letter from a bank showing that he is able to assume/refinance the mortgage loans along with the equity he would owe to Defendant-Wife.

39. Defendant-Wife testified that she also wishes to be awarded the real estate at the appraised value. Defendant-Wife testified that she got a preapproval to

obtain a loan to refinance the marital residence and pay out Plaintiff-Husband's equity interest. No documentation of Defendant-Wife's preapproval was presented in evidence.

September 15, 2025 Judgment Entry – Decree of Divorce at 9.

{¶ 15} The trial court determined it was fair and equitable for the marital home "to be sold and that the proceeds be divided between the parties equally, with some adjustments." *Id.*

{¶ 16} Given the cited testimony and the lack of documentation provided to the trial court, we cannot say the trial court abused its discretion in ordering the sale of the marital residence.

{¶ 17} Assignment of Error I is denied.

## II

{¶ 18} In Husband's second assignment of error, he claims the trial court erred in ordering him to sell personal property. We disagree.

{¶ 19} In dividing the parties' personal property, the trial court determined that each party shall retain their own clothing, jewelry, and personal effects and any remaining household goods and furnishings shall be divided between the parties pursuant to an alternate choice method. September 15, 2025 Judgment Entry – Decree of Divorce at 14. The trial court singled out Husband's firearms, finding the following:

89. Plaintiff-Husband testified that he owns five guns. He testified that he inherited one of the guns, an old 22, from his father in 2019. He testified that the other four guns, which include two pistols, a shot gun, and a rifle, were nothing significant.

90. The gun Plaintiff-Husband inherited from his father is Plaintiff-Husband's separate property. No testimony concerning the value for this gun was presented in evidence. Therefore, the value is unknown to the Court.

91. Plaintiff-Husband shall retain his father's gun, the old 22, as his separate property.

92. The remaining guns owned by Plaintiff-Husband are marital property. No testimony concerning the value for Plaintiff-Husband's two pistols, the shotgun, and the rifle was presented in evidence. Therefore, the values are unknown to the Court.

93. Plaintiff-Husband's two pistols, the shotgun, and the rifle shall be sold to a licensed gun dealer, and the proceeds of the sale of all four guns shall be divided between the parties pursuant to the orders set forth below.

{¶ 20} The trial court's findings are supported by the record; Husband testified there was nothing significant about four of the firearms. T. at 34-35. He did not provide valuations for the firearms.

{¶ 21} Based upon the state of the evidence presented to the trial court, we cannot say the trial court abused its discretion in ordering the sale of the firearms.

{¶ 22} Assignment of Error II is denied.

III

{¶ 23} In Husband's third assignment of error, he claims the trial court abused its discretion in choosing July 22, 2025, the date of the hearing, as the termination date of the marriage instead of accepting August 2024, the month Wife moved out of the marital residence and the parties began living separately, as the de facto termination date of the marriage. We disagree.

{¶ 24} R.C. 3105.171(A)(2) states "during the marriage" is whichever of the following is applicable:

    (a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;

    (b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.

{¶ 25} "Thus, R.C. 3105.171(A)(2) creates a statutory presumption that the proper date for the termination of a marriage, for purposes of the division of marital property, is the date of the final divorce hearing." *Boggs,* 2008-Ohio-1411, at ¶ 64 (5th Dist.), citing *Bowen v. Bowen*, 132 Ohio App.3d 616, 630 (1999). "[C]ourts should be reluctant to use a de facto

termination of marriage date unless the evidence clearly and bilaterally shows that it is appropriate based on the totality of the circumstances." *Boggs* at ¶ 66. Several factors to guide a trial court in determining whether a de facto termination of marriage date would be equitable includes whether:

> (1) the parties separated on less than friendly terms, (2) the parties believed the marriage ended prior to the hearing, (3) either party cohabited with another person during the separation, (4) the parties were intimately involved during the separation, (5) the parties lived as husband and wife during the separation, (6) the parties maintained separate residences, (7) the parties utilized separate bank accounts or were/were not financially intertwined (with the exception of temporary orders), (8) either party attempted to reconcile, (9) either party retained counsel, and (10) the parties attended social functions together or vacationed together.

*Dill v. Dill,* 2008-Ohio-5310, ¶ 11 (3d Dist.).

{¶ 26} The *Dill* court noted "[n]o one factor is dispositive; rather, the trial court must determine the relative equities on a case-by-case basis." *Id.,* citing *Berish,* 69 Ohio St.2d at 319-320.

{¶ 27} Husband argues he informed Wife he wanted a divorce on August 10, 2024, and she moved out of the marital residence on August 17, 2024; Wife returned several times to the marital residence to remove items. Appellant's Brief at 7-8. He argues August 2024

should be the de facto termination date of the marriage because by then, the parties were living separately, maintaining separate finances, their relationship was contentious, and he often had another woman stay with him in the marital residence. *Id.* He argues choosing July 22, 2025, as the termination date resulted in an inequitable division of marital property.

{¶ 28} In rendering July 22, 2025, as the termination date of the marriage, the trial court found the date to be equitable under R.C. 3105.171(A)(2)(a) without further comment. September 15, 2025 Judgment Entry – Decree of Divorce at 2.

{¶ 29} While several of the *Dill* factors applied in this case, we note the *Dill* case involved a ten-year separation. The *Dill* court acknowledged "the one common factor among the cases reversed on appeal was that 'a great deal of time elapsed from the date of separation and the date of the final hearing.'" *Dill* at ¶ 12, citing *Fisher v. Fisher,* 2002 Ohio App. LEXIS 1323, *10 (3d Dist. Mar. 22, 2002). Here, Husband is arguing about an eleven-month difference; he argues the trial court failed to consider that he paid the mortgage for eleven months after the parties separated. But he also notes he had exclusive use of the marital home during that time. Wife moved out of the marital home after Husband informed her that he wanted a divorce. T. at 20, 158-159. Husband never argued for a de facto termination date at the hearing, so he never submitted evidence to show how the final hearing date as the termination date was inequitable.

{¶ 30} The trial court accepted the statutory presumption in R.C. 3105.171(A)(2)(a) and found it was equitable for the duration of the marriage to be "the period of time from the date of the marriage through the date of the final hearing." We cannot say the trial court abused its discretion in its finding.

{¶ 31} Assignment of Error III is denied.

{¶ 32} In Husband's fourth assignment of error, he claims the trial court erred in awarding spousal support to Wife and maintaining jurisdiction over the issue. We disagree.

{¶ 33} R.C. 3105.18 governs spousal support. Subsection (C) sets forth numerous factors for the trial court to consider in fashioning a spousal support order. The trial court considered each factor and ordered Husband to pay Wife $5.00 per month for an indefinite duration, finding:

> it is reasonable and appropriate to maintain jurisdiction over spousal support given the duration of the marriage, the age of the parties, and the unknown income of each party following Defendant-Wife's retirement and the division of the retirement assets set forth herein. Therefore, given the decisions of the Fifth District Court of Appeals set forth above, the Court must issue a minimal spousal support order herein to maintain jurisdiction over the same.

September 15, 2025 Judgment Entry – Decree of Divorce at 25, citing *Long v. Long,* 2000 Ohio App. LEXIS 3327, *6 (July 24, 2000) ("we conclude the trial court erred in retaining jurisdiction over spousal support when none had been awarded").

{¶ 34} The trial court retained jurisdiction over the spousal support award, reasoning:

> While Defendant-Wife' s retirement is contemplated at some future date, the parties' financial circumstances at the time of Defendant-Wife's retirement after

the division of the retirement assets set forth herein are unknown to the Court at this time. Therefore, Defendant-Wife's retirement and the determination of the income of each party following the Division of the retirement assets as set forth herein may be a change of circumstances allowing the Court to consider a modification of the spousal support award.

September 15, 2025 Judgment Entry – Decree of Divorce at 26.

{¶ 35} The parties' respective incomes are similar, with Husband making approximately $5,000.00 more than Wife, depending on how much she makes on a side catering job. *Id.* at 20-21. Husband is retired and has three income streams: military retirement pay, a VA disability benefit, and a Social Security disability benefit. T. at 50-54; Plaintiff's Exhibits 4, 5, and 6. The trial court ordered one-half of the marital portion of Husband's military retirement pay to Wife. September 15, 2025 Judgment Entry – Decree of Divorce at 22. Wife has 33 years in as a teacher and has no plans to retire, but is concerned after she does retire, "it will be difficult" to pay all her bills without help. T. at 140, 190. The trial court ordered one-half of the marital portion of Wife's STRS pension to Husband. September 15, 2025 Judgment Entry – Decree of Divorce at 22. The trial court retained jurisdiction to consider a future modification as circumstances change.

{¶ 36} Given the trial court's concern over the uncertainty of the parties' financial circumstances after Wife's retirement, we cannot say the trial court abused its discretion in its spousal support order.

{¶ 37} Assignment of Error IV is denied.

{¶ 38} For the reasons stated in our accompanying Opinion, the judgment of the Fairfield County Domestic Relations Court is AFFIRMED.

{¶ 39} Costs to Appellant.

By: King, P.J.

Montgomery, J. and

Popham, J. concur.